DePaul et al., Appellants, *v.* Kauffman.

Argued May 6, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert L. Franklin,* with him *Harry P. Voldow,* for appellants.

*Charles H. Barron,* with him *Lynn S. Moore,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 7, 1971:

This Court is urged by this appeal to hold unconstitutional the Pennsylvania Rent Withholding Act, Act of January 24, 1966, P. L. (1965) 1534, §1, as amended, 35 P.S. §1700-1 (Supp. 1970). We are unpersuaded and hold that Act to be a valid exercise of the Commonwealth's police power.

According to the terms of the Rent Withholding Act,[1] if a city certifies a dwelling as "unfit for human habitation", the tenant's rental obligation is suspended until the dwelling is re-certified as "fit" or until the tenancy is terminated for a reason other than the non-payment of rent. During the period of rent suspension, rents due are to be deposited in an escrow account. If the dwelling is re-certified as fit within six months after the original certification of unfitness, all funds in the escrow account are payable to the landlord. If, however, the dwelling remains unfit at the expiration of the six month period, all escrow funds are returnable

---

[1]The Act reads in full: "Notwithstanding any other provision of law, or of any agreement, whether oral or in writing, whenever the Department of Licenses and Inspections of any city of the first class, or the Department of Public Safety of any city of the second class, second class A, or third class as the case may be, or any Public Health Department of any such city, or of the county in which such city is located, certifies a dwelling as unfit for human habitation, the duty of any tenant of such dwelling to pay, and the right of the landlord to collect rent shall be suspended without affecting any other terms or conditions of the landlord-tenant relationship, until the dwelling is certified as fit for human habitation or until the tenancy is terminated for any reason other than nonpayment of rent. During any period when the duty to pay rent is suspended, and the tenant continues to occupy the dwelling, the rent withheld shall be deposited by the tenant in an escrow account in a bank or trust company approved by the city or county as the case may be and shall be paid to the landlord when the dwelling is certified as fit for human habitation at any time within six months from the date on which the dwelling was certified as unfit for human habitation. If, at the end of six months after the certification of a dwelling as unfit for human habitation, such dwelling has not been certified as fit for human habitation, any moneys deposited in escrow on account of continued occupancy shall be payable to the depositor, except that any funds deposited in escrow may be used, for the purpose of making such dwelling fit for human habitation and for the payment of utility services for which the landlord is obligated but which he refuses or is unable to pay. No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow."

to .the tenant, except that such funds may be used to effect repairs needed to render the dwelling fit or to pay for utility services for which the landlord is obli-gated but unwilling or unable to pay. The Act further provides that no tenant shall be evicted for any reason during the rent suspension period.

Appellants, Peter, Eugene and Helen DePaul, are the owners of a nine-unit apartment building on East High Street in Philadelphia. On or about April 4, 1968, the City of Philadelphia certified that property "unfit for human habitation". Pursuant to the Rent Withholding Act and beginning on April 27, 1968, rents were withheld and paid to appellee, Samuel Kauffman, as escrow agent.

On October 17, 1968, appellants filed a complaint in equity seeking a declaration that the Rent Withholding Act is unconstitutional and an injunction restraining appellee from returning any of the escrow funds to the depositing tenants.[2] In addition to the foregoing facts, appellants alleged that on some unspecified date they had applied for a loan to enable them to improve their East High Street property so as to make it "fit for human habitation". They asserted, however, that their loan application could not be processed before the ex-piration of the statutory six month period on October 27, 1968.

After the issuance of a preliminary injunction, ap-pellee filed preliminary objections in the nature of a de-murrer, alleging that he had complied fully with the provisions of the Rent Withholding Act. The court of common pleas sustained the preliminary objections and dissolved the preliminary injunction. The present ap-peal followed.

---

[2]According to the opinion of the court of common pleas, the Attorney General was notified of the action pursuant to Rule 235, Pa. R. C. P., but did not enter an appearance.

Appellants assert that the Rent Withholding Act is an unconstitutional delegation of legislative authority; that it suffers from a degree of vagueness offensive to the Fourteenth Amendment; that it allows the taking of their property without due process of law; and that it impairs the obligations of their contracts in violation of Article I, Section 17 of the Pennsylvania Constitution and Article I, Section 10 of the United States Constitution. We shall discuss each of these contentions in turn.

The Rent Withholding Act provides for certain consequences "whenever the Department of Licenses and Inspections . . . certifies a dwelling as *unfit for human habitation* . . . [and] until the dwelling is [re-]certified as *fit for human habitation* . . . ." (Emphasis added.) The Act does not otherwise define the concepts of "unfit for human habitation" and "fit for human habitation" but rather leaves to the Department of Licenses and Inspections the task of applying them to specific cases. Appellants argue that the act of applying such general standards is essentially legislative and that the vesting of such a function in a municipal agency is an illegal delegation of legislative authority in violation of Article II, Section 1 of the Pennsylvania Constitution. We do not agree.

The basic doctrines relating to the nondelegability of legislative power are well-settled. "It is generally agreed that the nondelegation principle does not require that all details of administration be precisely or separately enumerated in the statute. 'While the legislature cannot delegate power to make a law, it may, where necessary, confer authority and discretion in connection with the execution of the law; it may establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the act.' . . . However, legislation must contain adequate standards

which will guide and restrain the exercise of the delegated administrative functions. . . ." *Chartiers Valley Joint Schools v. Allegheny Bd. of School Directors,* 418 Pa. 520, 529-30, 211 A. 2d 487, 492-93 (1965) (citations omitted).

The foregoing principles have been applied by this Court on numerous occasions. In *Archbishop O'Hara's Appeal,* 389 Pa. 35, 50, 131 A. 2d 587, 594 (1957), the standard of "the promotion of the health, safety, morals and general welfare . . ." was deemed sufficient to limit the administrative exercise of the zoning power to grant or refuse a special exception. The similarly general standard of "detrimental to welfare, health, peace and morals of the inhabitants of the neighborhood" was held to provide adequate guidance for the administrative refusal of a liquor license in *Tate Liquor License Case,* 196 Pa. Superior Ct. 193, 173 A. 2d 657 (1961). See also *Deposit Trust Co. v. Myers,* 388 Pa. 444, 451, 130 A. 2d 686, 689 (1957) (statement that "adequacy or inadequacy of banking facilities" a proper criterion). And, as we stated in *Chartiers,* supra: "In construing the Constitution of Pennsylvania on the delegation issue, we may look to similar cases construing the Constitution of the United States. Marshall Impeachment Case, 363 Pa. 326, 338, 69 A. 2d 619, 626 (1949); Holgate Bros. Co. v. Bashore, 331 Pa. 255, 259-60, 200 Atl. 672, 674 (1938). With the legislative criteria enunciated in the present case, compare for example, that which was statutorily given and judicially sustained in the following cases: Lichter v. United States, 334 U.S. 742, 778-86, 68 S. Ct. 1294, 1313-17 (1948) ('excessive profits'); American Power & Light Co. v. S. E. C., 329 U.S. 90, 104-06, 67 S. Ct. 133, 141-42 (1946) ('unfairly or inequitably' distributes corporate voting power); Federal Radio Comm'n v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 285, 53 S. Ct. 627, 636 (1933) ('public convenience or necessity'); New York Central

Sec. Corp. v. United States, 287 U.S. 12, 24-25, 53 S. Ct. 45, 48 (1932) ('public interest')." 418 Pa. at 538, 211 A. 2d at 497. In terms of specificity, the standards of "fit for human habitation" and "unfit for human habitation" contained in the Rent Withholding Act compare favorably with the majority, if not all, of the standards judicially approved in the state and federal cases listed above. It is therefore evident, without the need for further discussion, that the Rent Withholding Act does not unconstitutionally delegate legislative power.

Appellants also complain that the terms "fit for human habitation" and "unfit for human habitation" are so lacking in specificity as to render the Rent Withholding Act void for vagueness under the Fourteenth Amendment. This contention is also without merit. Section 7-506 of the Philadelphia Housing Code defines as unfit for human habitation any dwelling which "constitutes a serious hazard to the health or safety of the occupants or to the public because it is dilapidated, unsanitary, vermin-infested or lacking in the facilities and equipment required by this Title." This provides ample notice to the owner of rental property of the standard to which his property must conform.

Appellants further contend that the Rent Withholding Act works an arbitrary and unreasonable taking of their property without due process of law by denying them the right to collect rent and simultaneously protecting the tenant from eviction.

It has long been recognized that property rights are not absolute and that persons hold their property " 'subject to valid police regulation, made, and to be made, for the health and comfort of the people . . . .' " *Nolan v. Jones*, 263 Pa. 124, 131, 106 Atl. 235, 237 (1919). See, e.g., *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114 (1926). And among the legitimate

objects of the regulation of property for the general welfare is an adequate supply of safe and decent housing. As put by Mr. Justice Holmes: "Housing is a necessary of life. All the elements of a public interest justifying some degree of public control are present". *Block v. Hirsh,* 256 U.S. 135, 156, 41 S. Ct. 458, 460 (1921). Of course, "a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained". *Gambone v. Commonwealth,* 375 Pa. 547, 551, 101 A. 2d 634, 637 (1954); *Pennsylvania State Bd. of Pharmacy v. Pastor,* 441 Pa. 186, 272 A. 2d 487 (1970). In light of these principles, the Rent Withholding Act does not offend due process.

It is evident that the sanctions imposed by the Act bear a real and substantial relationship to its objective of assuring decent and habitable rental property. "In Reitmeyer v. Sprecher, 431 Pa. 284, 289-90, 243 A. 2d 395 (1968), we recognized that a severe housing shortage exists in many parts of the Commonwealth and that much of what housing does exist is in very poor condition. The legislature was obviously attempting [through the Rent Withholding Act] to improve this situation by giving tenants the power to put pressure on landlords to repair dilapidated, unsafe dwellings". *Klein v. Allegheny County Health Dep't,* 441 Pa. 1, 7, 269 A. 2d 647, 651 (1970) (footnote omitted).[3] It seems a matter of common sense that one in the business of renting real estate for profit who is faced with the temporary or permanent loss of rental income will, in some instances, take steps to avoid that loss. Indeed, appellants in this very case

[3]Our decision in *Klein* involved only an issue of statutory construction and did not reach the question of the Act's constitutionality.

allege that after their property was declared unfit they sought to obtain a loan to enable them to make the necessary repairs.

Appellants' real complaint is that the Act is too severe, that it is "unduly oppressive or patently beyond the necessities of the case". *Gambone, supra.* In this regard, they note that under the terms of the Rent Withholding Act a tenant may but need not necessarily employ the escrow funds to make the needed improvements and can avoid eviction during the period of rent suspension notwithstanding his mistreatment of the property or other violation of his lease, and the landlord may irretrievably lose rentals if, after making a good faith and reasonable effort, he cannot rehabilitate the property within six months after its certification as unfit. Appellants also construe the Act as allowing the tenant to remain in possession regardless of his payment of rent to the escrowee and as requiring the landlord to renew a lease which is set to expire during the statutory six month period. The foregoing features, however, do not render the Act unduly oppressive or otherwise unreasonable.

Preliminarily, we note that appellants' interpretation of the Act is erroneous in two respects. The Rent Withholding Act states expressly that "[d]uring any period when the duty to pay rent is suspended, and the tenant continues to occupy the dwelling, the rent withheld *shall be deposited* by the tenant in an escrow account . . ." (emphasis added.) This language makes clear that a tenant may in no event remain in possession without paying the required rent to the escrowee. See also *National Council v. Roberson,* 214 Pa. Superior Ct. 9, 248 A. 2d 861 (1969) (majority and concurring opinions). In addition, the Act does not, as appellants argue, require the renewal of a lease which is set to expire during the six month period of rent suspension. The Act provides that the duty to pay and

the right to receive rent shall be suspended "without affecting any other terms or conditions of the landlord-tenant relationship". As the termination date of a lease is surely a term or condition of that relationship, the quoted language suggests that there is no requirement of involuntary lease renewal. On the other hand, the last sentence of the Act states: "No tenant shall be evicted for any reason whatsoever while rent is deposited in escrow". To give meaning to both of these portions of the Act, we conclude that the Act does not require the *renewal* of an existing lease but only an *extension* of the original lease so long as rent is in escrow.

This construction serves the intent of the Act. Undoubtedly, a portion of those who rent unfit dwellings are tenants from month to month or at will. With respect to this class of tenants, if the Act were construed to require no extension of the tenant's possessory right, the landlord could largely avoid the impact of the Act by giving notice to vacate as soon as the first rental payment was put in escrow. However, in the case of a tenancy from year to year or longer set to expire one or two months prior to the expiration of the rent withholding period, the objectives of the Act would not be served and the landlord would be needlessly burdened, if he were required to renew the lease for an entire additional term.

That the Rent Withholding Act permits but does not require the necessary improvements to be made with the escrow funds is surely not unreasonable. A substantial and recurring part of a landlord's business is the maintenance of his property. Accordingly, it is to be expected that most landlords possess either the skills needed to make property repairs or, at least, the knowledge of whom to hire to make such repairs. Tenants, as a class, are not likely to possess these skills and this knowledge in the same degree. Thus, it is far

from unreasonable to put the burden on the landlord rather than the tenant to make the needed repairs. Of course, the Act imposes an additional burden upon the landlord in the sense that he will be out of pocket to the extent of the cost of the repairs until the repairs are completed and the rents released from escrow, but we do not deem this unduly oppressive.

Neither are we persuaded by the example of a landlord who is unable to make the required improvements within six months notwithstanding his good faith efforts to do so. In the first place, the Legislature had to set *some* cut off point in order to make meaningful the sanction of permanent rent loss. Otherwise, a landlord could procrastinate interminably. A half a year is surely not an unreasonably short time. Furthermore, there can be little sympathy for the landlord who despite diligence and good faith cannot repair his property within the alloted time. Landlords have a duty to maintain their properties in a condition fit for human habitation not only after that property has been certified as unfit but *at all times*. Section 7-104 of the Philadelphia Housing Code itself provides for fines of up to $300 or imprisonment for up to 90 days or both, for any violation for each day such violation continues after notice and opportunity to comply. Section 7-505 of the Code provides for direct abatement of the violation by the Department of Licenses and Inspections. Thus it is not unreasonable that a landlord suffer a financial penalty even if he cannot render his property fit within six months after its certification as unfit. This situation might have even been contemplated by the Act: the goal of good housing would be served not only by rehabilitating houses which are certified as unfit but also by *deterring* owners of rental property from allowing their property to degenerate into a condition of unfitness in the first place.

The provision of the Rent Withholding Act that insulates a tenant from eviction during the rent withholding period is not a constitutional deficiency. To be sure, this statutory right is a windfall to the tenant. However, it serves as an additional deterrent inducing the landlord to maintain his property in a habitable condition. Furthermore, one of the possibly beneficial effects of the Act is that it permits the aid of tenants in an effort to enforce health and housing codes. To enlist tenant initiative, the Legislature might well have deemed it necessary to forestall tenant fear of landlord reprisal. And in the case where a tenant abuses the leased property while shielded from eviction by the statute, the landlord is fully protected. He may sue the tenant for money damages for any destruction or, if monetary damages are inadequate, seek an injunction against the misuse of his property.

Finally, appellants assert that the Rent Withholding Act unconstitutionally impairs the obligation of contracts. This contention must also be rejected.

As applied to leases entered into or renewed after the effective date of the Act, there can be no "impairment", for the laws in force when a contract is entered into become part of the obligation of contract "with the same effect as if expressly incorporated in its terms". *Beaver County Bldg. & Loan Ass'n v. Winowich,* 323 Pa. 483, 489, 187 Atl. 481, 484 (1936). See *Levy Leasing Co. v. Siegel,* 258 U.S. 242, 249, 42 S. Ct. 289, 292 (1922) ; *Oshkosh Waterworks Co. v. Oshkosh,* 187 U.S. 437, 446, 23 S. Ct. 234, 237 (1903).

With regard to leases that predate the effective date of the Act, it must be borne in mind that " 'the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as . . . are necessary for the general good of the public, though contracts previously entered into between indi-

viduals may thereby be affected.' " *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 437, 54 S. Ct. 231, 240 (1934). This Court has itself recognized that " '[t]he constitutional protection of the obligation of contracts is necessarily subject to the police power of the state, and therefore a statute passed in the legitimate exercise of the police power will be upheld by the courts, although it incidentally destroys existing contract rights. . . .' " *Zeuger Milk Co. v. Pittsburgh School District,* 334 Pa. 277, 280, 5 A. 2d 885, 886 (1939) (citations omitted) (sustaining minimum price regulation modifying price term of existing contract).

We have already concluded that the Rent Withholding Act is a legitimate exercise of police power. In light of the paramount public interest in safe and decent housing, the landlord's pre-existing duty to comply with housing code standards, and the fact that in most instances there will be no permanent rent loss, we do not consider the Act to be an unconstitutional impairment of contract obligations.

Our conclusion today finds support in decision of other jurisdictions which have upheld similar legislation. See *Second Nationl Bank of New Haven v. Loftus,* 121 Conn. 454, 185 Atl. 423, (1936) ; *Burlington & Summit Apartments v. Manolato,* 233 Iowa 15, 7 N.W. 2d 26 (1942) ; *Farrell v. Drew,* 19 N.Y. 2d 486, 227 N.E. 2d 824, 281 N.Y.S. 2d 1 (1967) ; *Ten West 28th Street Realty Corp. v. Moerdler,* 52 Misc. 2d 109, 275 N.Y.S. 2d 144 (1966) ; *Himmel v. Chase Manhattan Bank,* 47 Misc. 2d 93, 262 N.Y.S. 2d 515 (1965) ; *Emray Realty Corp. v. DeStefano,* 5 Misc. 2d 352, 160 N.Y.S. 2d 433 (1957).

The decree of the Philadelphia Court of Common Pleas is affirmed. Appellants to pay costs.

Mr. Justice COHEN took no part in the decision of this case.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Many, many houses in Philadelphia are "unfit for human habitation" and are a disgrace to our City. It is imperative that this City-wide deplorable condition be quickly eliminated and Philadelphia (and also all other Cities in the Commonwealth) made a fit place in which to live and of which all of us can be very proud. However, this can and must be done in such a way as not to violate the Constitution. For example, this can be done under a realistic grant by the Legislature of the "police power" or under any other Constitutionally delegated power. While the State can confer or delegate power and authority and discretion in connection with the execution of an Act, and may impose upon others a right or duty to carry out the declared Legislative purpose and intent in accordance with the standards or guideposts clearly set forth in said Act, the Legislature must provide definite and adequate standards which will clearly permit and guide or limit (as the case may be) the exercise of the delegated administrative functions. See *Chartiers V. Jt. Schs. v. Allegheny Co. Bd.,* 418 Pa. 520, 529-530, 211 A. 2d 487. Unfortunately, the Pennsylvania Rent Withholding Act, *as drawn* (and adopted) by the Legislature, failed to comply with the requirements of the Constitution, and the Philadelphia Ordinance cannot cure this Legislative failure. None of the cases relied upon by the Majority are applicable or controlling.

How many hundreds of times do we have to reiterate that (a) a worthy objective, or (b) the existence of deplorable conditions which everyone believes should be remedied, do not justify ignoring or violating the Constitution? Because this Act, with its undoubtedly worthy objectives, (1) is not a realistic and lawful exercise or Legislative delegation of the police power, and (2) violates several other provisions of the Constitution, I am compelled to dissent.