## Boyle v. Boyle

*Daniel Krause*, for plaintiff.
*Mark J. Goldberg*, for defendant.

COLBERT, *J.*, September 10, 1979—The question before this court arose from the filing of a petition under the Protection From Abuse Act of October 7, 1976, P.L. 1090, as amended, 35 P.S. §10181 et seq. On July 12, 1979, petitioner, Grace Boyle, requested that her husband and respondent, James Donald Boyle, be restrained from abusing her and their children. Petitioner further requested that he be excluded from the residence of the parties, owned by them as tenants by the entireties.

On the day of presentation, the court entered an ex parte temporary order granting petitioner the requested relief. A final hearing was set for July 23, 1979.

Respondent filed an answer and new matter to the petition on July 19, 1979. His pleading contradicted many of petitioner's allegations and raised for the first time the specter of the constitutionality of the act under which the petition had

been presented. Respondent simultaneously filed preliminary objections specifically raising that issue.

On July 26, 1979, this court heard extensive oral argument on the merits of the preliminary objections. Counsel for respondent, counsel for petitioner, the Commonwealth Attorney General's office and Neighborhood Legal Services each presented their respective arguments and subsequent briefs.

On the basis of the preliminary objections, this court is urged by respondent to hold unconstitutional the Pennsylvania Protection From Abuse Act. This court has not been successfully persuaded and holds that the act is a valid exercise of the Commonwealth's police power.

In attempting to support his position, respondent raises a number of issues. He asserts that the act in question allows for a taking of property without a jury trial, just compensation or due process of law; is vague and indefinite and therefore not uniformly applied throughout the Commonwealth; is an ex post facto law in that it may be applied to incidents occurring prior to its effective date; and finally subjects a defendant to criminal contempt and sanctions without an opportunity to be heard. We shall discuss each of these contentions separately and in detail.

It has long been recognized that one who challenges the constitutionality of the exercise of the state's police power affecting a property interest must overcome a heavy burden of proof to sustain that challenge: Goldblatt v. Town of Hempstead, 369 U.S. 590 (1962); Com. v. Barnes & Tucker Co., 472 Pa. 115, 123, 371 A. 2d 461 (1977). The Pennsylvania Supreme Court held in Com. v. Barnes &

Tucker Co., supra, at page 465, applying the language of DePaul v. Kauffman, 441 Pa. 386, 393, 272 A. 2d 500 (1971):

"The police power is the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare. 'It has long been recognized that property rights are not absolute and that persons hold their property "subject to valid police regulation, made, and to be made, for the health and comfort of the people. . . ."'"

The Pennsylvania Supreme Court also reaffirmed the classic test applied in determining whether or not there has been an unconstitutional exercise of the state's police power. The interest of the general public must be served, rather than a particular class, and the purpose of the law must not be unduly oppressive upon a few individuals. These principles are stated by the Pennsylvania Supreme Court also in its opinion in DePaul v. Kauffman, supra, 441 Pa. 394, 272 A. 2d 504, wherein it summarizes the opinions of both the United States and Pennsylvania Supreme Courts as follows:

"Of course, 'a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained.'"

In light of these principles, the Protection From Abuse Act, including its sanctions and objectives, does not offend due process. The sanctions imposed by the act bear a real and substantial relationship to

its stated objectives. These objectives are to provide for remedies and procedures relating to abuse of adults or children by a person who is a member of the family or household.

The battered spouse problem has become one of the social enigmas of this country. As ably stated by Senator Jubelirer in his comments in the Senate Journal made in recommending passage of the act: "I think the statistics and the circumstances have indicated overwhelmingly that the abused spouse issue is one of the most significant issues in the Commonwealth today, if not in the nation." 1 Legislative Journal, Senate Session of 1976, No. 113, p. 1747. This social problem is aptly dealt with in Deborah Flynn's article appearing in Domestic Relations—The Protection From Abuse Act, 51 Temple L.Q., 116 (1978). She points out that one out of every three marriages involves some form of physical abuse and that in 1973 one-eighth of the nation's homicides occurred between spouses. These statistics are very carefully documented by footnotes and citations in her article.

To implement this goal, the legislature provided in the act that a plaintiff may institute an action by filing a petition in the court of common pleas alleging abuse by the defendant and, after an ex parte hearing, within ten days thereof a final hearing must be held before the court to determine the veracity of the allegations by the petitioner. The court is given the power to issue temporary orders to protect the petitioner immediately, if necessary, during the interim period until the final hearing is held. After final hearing, the court is empowered to grant a protection order or approve a consent agreement which is intended to terminate abuse of the plaintiff

or minor children and includes, as set forth in section 6, paragraphs (1) and (2): "(1) Directing the defendant to refrain from abusing the plaintiff or minor children. (2) Granting possession to the plaintiff of the residence or household to the exclusion of the defendant by evicting the defendant and/or restoring possession to the plaintiff when the residence or household is jointly owned or leased by the parties."

Prior to the passage of this act, the only protection the battered spouse had was to seek relief in a criminal procedure before a justice of the peace or a district magistrate. The legislature was impressed by and aware of the inadequacies of this procedure and the remedies available in dealing with spouse abuse. The peace bond route was very ineffective and in many instances the parties found themselves in the local magistrate's office time and time again without any practical or continuing solution to the problem. There is no question in the mind of the court that this act bears a real and substantial relationship to the objective of alleviating this situation and certainly is intended to be in the interest of the general public.

We are, however, not convinced that the act is too severe or that it goes patently beyond the necessities of the stated purpose of the legislature in providing for the expulsion of a defendant. In the case at bar, petitioner and respondent owned their residence as tenants by the entireties. Under these facts, as in all cases of joint ownership, each cotenant is entitled to possession of the whole. As was forcefully stated by the Pennsylvania Supreme Court in DePaul v. Kauffman, supra, at page 504, property rights are not absolute but are subject to the legitimate use of the state's police power.

The constitutionality of the act is further strengthened by the opinion of the United States Supreme Court in Village of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926). This landmark opinion holds that municipal zoning regulations do not deprive a landowner of liberty or property without due process, even though such regulations may *limit the use* to which the land may be put or reduce the value of the real estate itself. In light of Euclid, DePaul and Com. v. Barnes, supra, we hold that the act in question validly employs the police power of the Commonwealth, in a reasonable manner, to abate a well recognized and widely spread social problem. Any deprivation of the use of property which may occur under the act is temporary. Exclusion is a last resort to be employed only when other means to abate the abuse have failed. The maximum period of exclusion is one year, and all exclusion orders are modifiable on motion by either party: 35 P.S. §10186(b). The act, by its own terms, does not in any manner affect title to real estate: 35 P.S. §10186(c). In view of this, the Commonwealth is properly employing its police power. There is no unconstitutional "taking" or unconstitutional deprivation of individual rights and property rights: Com. v. Barnes, supra at 467. The restrictions that the act places on the use of property to protect abused spouses and children are necessary to dispel the dangers of domestic violence. In doing so, they violate no constitutional mandate against the taking of property.

There is, however, one problem which deeply concerns the court. After the initial ex parte hearing, defendant's use of the property can be denied, temporarily to be true, but denied nevertheless without defendant's having had a chance to utter so

much as one word in his own defense: 35 P.S. §10185(b). Would it be better to mandate that defendant receive one or two or three days notice prior to the presentation of the intitial petition alleging abuse? What saving grace would this provide? Could the couple ignore the abuse and live in harmony during this interim period until the court has an opportunity to hear the allegations supporting the petition?

The court rejects any such alternative as totally defeating the purpose of the act—immediate protection. The legislature gave the courts the power to proscribe immediate temporary relief in a volatile situation where there is imminent danger of recurrence or further abuse to the plaintiff or minor children. A notice requirement, which admittedly would better serve the Fourteenth Amendment of the United States Constitution, would also increase the risk of domestic violence. The Commonwealth, through the legitimate use of its police power, has given the courts the responsibility of reviewing the evidence presented at an ex parte hearing. Rather than a rigid procedural rule that demands that all defendants be given notice prior to a preliminary hearing or that all defendants be summarily evicted prior to a final hearing, the courts must consider each case on its own merits and strike a proper balance between due process and a present danger of domestic violence which requires immediate relief. In over two and one-half years of practical application of the act, it has become apparent to the court that almost half of the petitioners have themselves voluntarily removed from the premises to shelters or homes of relatives. In many of the cases, defendants have already withdrawn before the presentation of the initial petition.

The court is mindful of the potential for misuse of the statute in ex parte proceedings where temporary orders are to be based on the unilateral testimony of a petitioner. A defendant should not be excluded from his residence pending a final hearing unless no other viable alternative exists. Moreover, it is incumbent upon attorneys who practice before this court to use protection from abuse proceedings only when necessary and never as a wedge to gain advantage in other domestic proceedings. When these guidelines are followed, both the act and due process will be well served.

This court concludes, therefore, that a temporary denial of use to one who has allegedly perpetrated an anti-social act of abuse on another member of the family does not in and of itself make the act repugnant to the Constitution, particularly when the ex parte hearing judge can see evidence of violence manifested in burns, cuts, bruises and fractures. The court is not unmindful of, nor does it disregard, the high percentage of final hearings which never occur due to the consent arrangements entered into between the parties themselves resulting in the voluntary removal of defendant from the premises. To complain that the act is against public policy when it is working in this manner is in a way the begging of the question.

Respondent argues that the act deprives a defendant of the use and enjoyment of his property without the benefit of a jury trial. Article 1, sec. 6, of the Pennsylvania Constitution never contemplated that every litigated question of fact should be submitted to a jury. The thrust of the act invokes the equitable powers of the court and does not involve any criminal proceedings unless a defendant is accused of contempt for violating a court order under

the act: Cipolla v. Cipolla, _____ Pa. Superior Ct. _____, 398 A. 2d 1053 (1979). There has never been any right to trial by jury in a case sounding in equity: Com. by Kane v. Hilton, 24 Pa. Commonwealth Ct. 285, 355 A. 2d 841 (1976).

Respondent next argues that the act should be declared void for vagueness and that the act has not been uniformly applied throughout the courts of the Commonwealth, bringing about varied and sometimes arbitrary results. This contention is without merit. Respondent makes a general criticism that the "terms, provisions and definitions" of the act are vague, but nowhere does he direct the court to any particular section to support this contention.

After reviewing the act as a whole, we find that its provisions are constitutional in that it provides ample notice and explanation to a would-be offender of the conduct which is prohibited and the sanctions which may be imposed if such conduct is pursued. See DePaul, supra, at 504.

The act further provides that temporary orders may be entered by the court "upon good cause shown in an ex parte proceeding." Good cause is defined as immediate and present danger of abuse: 35 P.S. §10185. It is inevitable that courts in the Commonwealth will apply slightly different standards in their determination of what constitutes immediate and present danger of abuse, as well as what relief is most appropriate since each case and the facts presented with it will be particularly unique to the situation presented by the complainant. Under the equity power, courts have always enjoyed this flexibility in issuing injunctions and restraining orders. We find that a case by case determination of abuse petitions based upon the circumstances of each case is the only practical

means of implementing the act. The courts must not have their options limited in attempting to find the best remedy for a particular abuse case. It is not difficult at final hearing to determine just what went on between the parties. Immediately following the effective date of the act, there appeared the inevitable shoddy presentations for court consideration which in some cases were not even motivated by the desire to obtain protection. Many petitions were denied throughout the Commonwealth because they attempted to bring family situations within the purview of the act which were never intended to be there. After almost three years experience, the complaints are now clean, simple, uncluttered and present a clear issue. Uniform applicability is no more a problem here than for many other statutes, including the support act itself: The Pennsylvania Civil Procedural Support Law of July 13, 1953, P.L. 431, 62 P.S. §2043.31 et seq. (see now, Judicial Code, 42 Pa.C.S.A. §6701 et seq.).

Respondent argues that the statute permits retroactive application prior to its effective date, alleging, inter alia, that such application renders it an ex post facto law. Respondent further argues that plaintiff in the instant proceeding has made allegations concerning occurrences of prior abuses and that to permit testimony on these occurrences would result in an unconstitutional ex post facto law. This court does not believe the presenting of testimony on prior incidents of abuse vitiate the proceedings when there are also alleged the recent occurrences happening almost immediately prior to the presenting of the petition. If the prior incidents are considered at all by the court, they are done so merely to add weight to the possible devel-

opment of a trend culminating in the recent acts giving rise to the petition. With or without them, plaintiff's case is not strengthened or weakened.

We agree with the court in Smittle v. Smittle, 2 D. & C. 3d 476 (1977), where it was held that a statute is not made retroactive merely because it draws upon antecedent facts for its operation. In Smittle, the court refused to dismiss a protection from abuse petition even though the episode of abuse complained of occurred prior to the effective date of the act.

In Philadelphia Chewing Gum Corporation v. Com., etc., 35 Pa. Commonwealth Ct. 443, 387 A. 2d 142 (1978), the court was asked to find the Clean Streams Law unconstitutional because it permitted the court to consider discharges of pollution prior to the date of enactment. The court rejected this argument noting that defendant was being ordered to correct *present conditions* although the condition had been culminating for a number of years. In the case before us, our situation is much the same. Isolated examples of abuse prior to (or after) enactment of the act will not support sanctions if present conditions show that all potential for further abuse by defendant has ended and that the parties can co-exist peacefully. The act is concerned with "bringing about a cessation of abuse of the plaintiff and minor children": 35 P.S. §10186; and not with punishing a defendant for past conduct.

The court further takes note of the persuasive argument that the term "ex post facto" applies only to penal and criminal statutes. The act is designed to regulate present conduct and imposes no criminal sanctions unless a defendant is cited for contempt for violating an order of the court.

Respondent's final contention is that the act subjects the defendant to criminal sanctions without the corresponding rights a defendant is entitled to in a criminal proceeding. Respondent has correctly pointed out the similarity in language between the definition of "assault" under the Pennsylvania Crimes Code and the definition of "abuse" under the Protection From Abuse Act. However, this similarity does not control the purpose of the act which, as previously stated, is to regulate present and future conduct and not to punish a defendant for past conduct. The stated purpose of the act as passed by the legislature and implemented by the courts is clearly non-criminal. Defendant is entitled to none of the numerous rights that are unique to criminal proceedings.

In light of the above discussion, the Protection From Abuse Act is found to be constitutional in all respects raised by respondent; the preliminary objections are dismissed and plaintiff's petition is set for final hearing.

## ORDER

And now, September 10, 1979, after argument with both parties being present and represented by counsel, and the Commonwealth of Pennsylvania, by the office of the Attorney General, and the Neighborhood Legal Services Association representative also being present and arguing, it is hereby ordered, adjudged and decreed that the preliminary objections with respect to the constitutionality of the Protection From Abuse Act, 35 P.S. §10181 et seq., as amended, be and the same are hereby dismissed; and it is further ordered, adjudged and decreed that a final hearing on the petition for protection from abuse be held on September

19, 1979, at 2:30 p.m. before Judge Wm. Howard Colbert, at which time the parties in interest and their counsel are to be present and to be heard.