

1996 Decisions

**Opinions of the United States Court of Appeals for the Third Circuit**

12-17-1996

# Farley v. Phila Housing Auth

Precedential or Non-Precedential:

Docket 96-1286

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Farley v. Phila Housing Auth" (1996). *1996 Decisions.* Paper 15.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 96-1286


LATICIA FARLEY

v.

PHILADELPHIA HOUSING AUTHORITY; FLOYD BAKER;
PAMELA DUNBAR; CLAUDE ROSS

                    Philadelphia Housing Authority,
                    Floyd Baker, Pamela Dunbar and
                    *Claude Ross,
                              Appellants

                    *Amended Notice of Appeal filed
                    4/8/96



On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 95-cv-06616)



Argued October 28, 1996

BEFORE:  SCIRICA and COWEN, Circuit Judges
     and FEIKENS, District Judge**

(Filed December 17, 1996)



Denise J. Baker, Esq. (Argued)
Philadelphia Housing Authority
2012 Chestnut Street
Philadelphia, PA  19103

     COUNSEL FOR APPELLANT



** Honorable John Feikens, United States District Judge for the
   Eastern District of Michigan, sitting by designation.

Michael Donahue, Esq. (Argued)
Community Legal Services
1424 Chestnut Street
Philadelphia, PA  19102

        COUNSEL FOR APPELLEES


                              OPINION


COWEN, Circuit Judge.

    Appellants, the Philadelphia Housing Authority and its housing management personnel, Floyd Baker, Pamela Dunbar, and Claude Ross (collectively "the PHA"), appeal the March 8, 1996, order of the district court granting summary judgment to Laticia Farley, a public housing tenant, and denying their cross-motion for summary judgment.  The district court held that Farley had a cognizable claim under 42 U.S.C. § 1983, and ordered the PHA to fully comply with the arbitration award that directed it to make repairs to Farley's apartment.  The PHA contends that the district court did not have jurisdiction to enforce the arbitration award, and erred in holding that Farley had a cognizable federal cause of action under § 1983 to enforce a public housing grievance award pursuant to 42 U.S.C. §§ 1437d(k) and 1983.  We hold that the parties did not intend to limit enforcement of grievance awards to state court.  We also hold that Farley can bring a § 1983 action to enforce her federal right to implement the grievance procedure provided for in the Housing Act.

                              I.

                              A.
    The United States Housing Act, 42 U.S.C. § 1437 et seq., was designed to provide "decent, safe, and sanitary dwellings" within the financial reach of families of low income.  42 U.S.C. § 1437 (1994).  In order to encourage the construction and operation of low-income housing, the Act authorizes the Department of Housing and Urban Development (HUD) to provide grants, low-interest loans and tax exemptions to local public housing agencies known as PHAs.  Because

they receive federal subsidies, the PHAs are able to charge below-market rent to eligible low-income tenants. In exchange for receiving public funding, the local PHAs are required to operate public housing in compliance with the provisions of the Act.

Section 1437d(k) is the provision at issue in this appeal. As amended in 1983, this section provides that each public housing agency must implement an administrative grievance procedure for the resolution of all tenant disputes concerning adverse PHA action. It sets forth the grievance/arbitration procedure that the local PHAs must follow, as well as the rights to which tenants are entitled under that procedure.

The history of § 1437d(k) and its accompanying regulations dates back to 1971, when HUD issued a series of public housing circulars requiring the PHAs to recognize certain minimum tenant rights and provide an administrative grievance forum for tenant complaints concerning adverse PHA action. See U.S. Dept. Of Housing and Urban Development Circulars RHM 7465.8 and 7465.9. In 1975, HUD codified the requirements from the circulars in the Code of Federal Regulations. The circulars are currently codified in 24 C.F.R. § 966 (1994). These regulations require the local PHAs to establish and implement grievance procedures that provide tenants with hearings if they dispute any PHA action or inaction concerning lease provisions or local regulations. See 24 C.F.R. §§ 966.50, 966.51(a), 966.53(a)(1994). The City of Philadelphia's specific grievance procedure is outlined in the consent decree entered in Brown v. Philadelphia Housing Authority, No. 72-2083 (E.D. Pa. Mar. 15, 1974)("Brown consent decree"); see also Stipulation and Order Supplementing and Clarifying the Stipulation and Order of June 14, 1974, Brown v. Philadelphia Housing Authority, 72-2083 (E.D. Pa. Apr. 24, 1978).

Farley seeks to enforce a specific regulation which states that grievance awards are binding on the local housing authorities and requires them to "take all actions, or refrain from any actions, necessary to carry out the decision [of the hearing officer]." 24 C.F.R. § 966.57(b) (1994). Her cause of action arises strictly under § 1437d(k). Regulation § 966.57(b) merely interprets that section.

B.

Farley is a tenant of a building in Philadelphia that is managed by the Philadelphia

Housing Authority. She filed administrative grievances with PHA, seeking a number of repairs to her rental unit. She also sought an abatement of rent. Farley claimed that the repairs sought were necessary to prevent water from leaking into the basement of her rental unit. These repairs included repair or replacement of the heater, replacement of the windows, repair of the holes in the basement walls, repair of the leaking pipe in the basement, and repairs as necessary to remedy the low water pressure throughout her unit.

An arbitrator held a grievance hearing and entered an award in Farley's favor. The award stated:

1. The Philadelphia Housing Authority shall inspect and repair all items of a non-contract nature within thirty (30) days of the date of this Award. Any matters which require contract work shall be noted and written advice thereof shall be provided Ms. Farley and her counsel within thirty (30) days of this Award. All contracted work shall be completed within ninety (90) days of the date of this Award.

2. Ms. Farley is awarded a Ten (10%) percent abatement of rent for the period July 1, 1995 through such time as the requested repairs are completed. The abatement shall be credited to Ms. Farley's rent account.

App. at 159.

The PHA did not make the required repairs; nor did it give Farley the rent abatement. Thereafter, Farley filed an action in the district court to enforce her grievance award. The matter was brought for resolution in the district court by cross-motions for summary judgment. The PHA argued that the district court lacked jurisdiction to enforce the award or grant relief on what was basically a garden-variety state landlord/tenant dispute. Holding that it had jurisdiction to hear the matter, the district court granted Farley's motion for summary judgment and denied the PHA's cross-motion for summary judgment. This appeal followed.

II.

The jurisdiction of the district court to hear this matter and enter judgment on the arbitrator's award, is the issue on appeal. The district court entertained subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1337, 1343(a)(2),(3),(4) and §§ 2201,

2202. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over questions of subject matter jurisdiction and the district court's grant or denial of summary judgment. See Clark v. Clabaugh, 20 F.3d 1290, 1292 (3d Cir. 1994); see also Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Brown v. Francis, 75 F.3d 860, 864 (3d Cir. 1996).

III.

The PHA asserts that the district court had no jurisdiction under § 1983 to enforce Farley's grievance award. It argues that under the Brown consent agreement, the PHA consented only to the jurisdiction of the Pennsylvania state courts to enforce arbitration awards. It further contends it had no reasonable expectation that it would be called upon to defend arbitration enforcement proceedings in federal court.

In support of its argument, the PHA states that the express terms of Brown incorporate the entire Pennsylvania Arbitration Act of 1927. It also points to a provision in the 1978 amendment to Brown that reads, "[i]f either party should appeal an arbitrator's award, such appeal shall be governed by the provisions of the Pennsylvania Arbitration Act of 1927." Stipulation and Order Supplementing and Clarifying the Stipulation and Order of June 14, 1974, App. at 55, para. 3. The PHA argues that inclusion of this paragraph in the Brown consent agreement evidences the parties' intent to incorporate the entire Pennsylvania Arbitration Act of 1927. The PHA further cites a provision of the Pennsylvania Arbitration Act that states, "[a]n appeal may be taken from an order confirming, modifying, correcting, or vacating an award, or from a judgment entered upon an award, in accordance with the existing law in respect to appeals to the Supreme and Superior Courts." 5 P.S. § 175(a). Also brought to our attention is a provision from the Pennsylvania Act stating that all grievance awards "shall have the same force and effect, in all respects as, and be subject to, all the provisions of law relating to a judgment in an action at law, and it may be enforced as such in accordance with existing law." 5 P.S. § 174. In addition, the PHA cites to a provision that states, "[t]he provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania, or any agency or subdivision thereof, of any municipal corporation or political division of the Commonwealth shall be a

party."  5 P.S. § 176.  The PHA argues that, taken together, the above-cited provisions indicate that the parties consented solely to the jurisdiction of Pennsylvania state courts to enforce arbitration awards.  We disagree.

The Brown consent decree is a settlement agreement between the PHA and its tenants. We, therefore, construe it as a contract.  See Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 79 (3d Cir. 1982).  The scope of the Brown decree "must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it."  United States v. Armour & Co., 402 U.S. 673, 682, 91 S.Ct. 1752, 1757 (1971).  Reading the above provisions (paragraph 3 of the Brown amendments and §§ 174, 175, and 176 of the Pennsylvania Act) and looking to the entire documents, we find nothing in the Brown consent agreement demonstrating that the parties intended that enforcement actions be brought exclusively in state court.

The Brown decree is completely silent concerning the method for enforcement of arbitration awards.  Paragraph 3 of the agreement does not incorporate the entire Pennsylvania Arbitration Act.  It incorporates the Act only insofar as the Act concerns appeals of the award of an arbitrator.  The issue before the district court was not the propriety of the arbitrator's resolution of the grievance, but only the enforcement of the award arising from that grievance. Looking to the four corners of the consent agreement, we conclude that the parties to that agreement intended that state court procedures would apply only to the appeal of arbitrators' awards, not the method by which awards were to be enforced.

Finally, we cannot accept the position of the PHA that the provisions of the Arbitration Act are automatically incorporated into every contract involving a Commonwealth agency.  SeePennsylvania Turnpike Comm'n v. Sanders & Thomas, Inc., 336 A.2d 609, 615 (Pa. 1975) (incorporation of Act has occurred only where the contract contained an arbitration clause); see also Monte v. Southern Delaware County Auth., 321 F.2d 870 (3d Cir. 1963). In Monte, this Court stated that it would not "oust federal jurisdiction . . . merely because the Authority, as an arm of the state, is a party to this agreement."  Id. at 873.  We held that under the specific Montecontract, arbitration awards could be confirmed only in the Pennsylvania Court of Common Pleas.  We found that the parties in Monte intended to preclude federal court jurisdiction because the agreement in Monte contained a provision that incorporated the entire Pennsylvania

Arbitration Act.  Unlike the agreement in Monte, the Brown consent decree does not contain any such statement or any other indicia of intent to foreclose the enforcement of arbitration awards in federal court.

The PHA cites to DePaul v. Kauffman, 272 A.2d 500, 506 (Pa. 1971) for the proposition that statutory and regulatory provisions of law in force at the time the Brown consent decree was entered became part of that agreement with the same effect as if expressly incorporated in its terms.  Unlike the instant case, DePaul involved a constitutional challenge to the Pennsylvania Rent Withholding Act.  The appellants in that case claimed the Act unconstitutionally impaired the obligation of contracts.  The Pennsylvania Supreme Court rejected their claim, stating, "[a]s applied to leases entered into or renewed after the effective date of the Act, there can be no 'impairment', for the laws in force when a contract is entered into become part of the obligation of contract 'with the same effect as if expressly incorporated in its terms.'"  Id. (quoting Beaver County Bldg. & Loan Ass'n v. Winowich, 187 A. 481, 484 (Pa. 1936)).  The court went on to say, "[w]ith regard to leases that predate the effective date of the Act, it must be borne in mind that 'the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as . . . are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.'"  Id. (quoting Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 437, 54 S.Ct. 231, 240 (1934)) (alteration in original).

The resolution in DePaul is not precedent for the instant case.  We do not conclude that the Brown consent decree  automatically incorporates the Pennsylvania Arbitration Act.  In order to determine whether the Pennsylvania Act was incorporated into the Brown consent decree we must consider the intent of the parties.  See Halderman v. Pennhurst State School & Hosp., 901 F.2d 311, 322 (3d Cir.), cert. denied, 498 U.S. 850, 111 S.Ct. 140 (1990).  Nothing in Brownevidences the intent of the parties to incorporate the entire Pennsylvania Act.  Even if the parties did intend to incorporate the entire Pennsylvania Act, (which we do not believe they did), the Pennsylvania Arbitration Act, like the Brown consent decree, does not contain any provisions or procedures regarding enforcement.  The Act provides only that awards that have been confirmed,

modified or corrected shall be judgments which "may be enforced as such in accordance with
existing law."  5 P.S. § 174.  Nothing in the Act requires PHA tenants to enforce their awards in
state court.

IV.

Section 1983 provides a remedial device to enforce rights under the United States
Constitution and federal law.  In Maine v. Thiboutot, 448 U.S. 1, 7–8, 100 S.Ct. 2502, 2506
(1980), the Supreme Court held that plaintiffs may invoke § 1983 to redress violations of federal
statutory law by state actors.  The Supreme Court has set forth two exceptions to this general
rule.  See Pennhurst State School and Hosp. v. Halderman, 451 U.S. 1, 101 S.Ct. 1531 (1981);
see also Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 101
S.Ct. 2615 (1981). The Pennhurst exception applies where the statute did not create enforceable
rights within the meaning of § 1983.  Pennhurst holds that Congress must have intended for the
federal statute at issue to create enforceable rights in the private party, not for it to merely state a
preference or policy declaration.  Id. at 19, 101 S.Ct. at 1541.  Under the Sea Clammersexception, § 1983 cannot be invoked if Congress manifested in the statute itself an intent to
foreclose its private enforcement.  In Sea Clammers, the Court found that in enacting the Federal
Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972
Congress devised comprehensive remedial schemes that provided for private actions and left no
room for additional private remedies under § 1983.  See also Smith v. Robinson, 468 U.S. 992,
1012, 104 S.Ct. 3457, 3469 (1984)(indicating that a § 1983 action would be inconsistent with
Congress' carefully tailored remedial scheme in the Education of the Handicapped Act).

Following this framework, we look to the Pennhurst and Sea Clammers exceptions to
determine whether Farley has an enforceable federal right.  In doing so, we must analyze the
relevant statutory provisions "in light of the entire legislative enactment."  Suter v. Artist, M.,
503 U.S 347, 357, 112 S.Ct. 1360, 1367 (1992).  We must determine whether Congress intended
the statutory provision to benefit the plaintiff.  See Golden State Transit Corp. v. City of Los
Angeles, 493 U.S. 103, 106, 110 S.Ct. 444, 448 (1989).  Further, the statutory language must be
mandatory, not merely precatory in nature.  Pennhurst, 451 U.S. at 18, 101 S.Ct. at 1540.

Finally, the right may not be "'too vague and amorphous' to be 'beyond the competence of the
judiciary to enforce.'"  Golden State, 493 U.S. at 106, 110 S.Ct. at 448 (quoting Wright v. City
of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 431–32, 107 S.Ct. 766, 774–75
(1987)).

## A.

Farley's § 1983 claim does not fall within the Pennhurst exception.  We conclude that by
enacting 42 U.S.C. § 1437d(k), Congress intended to give public housing tenants a right to
enforceable grievance awards.  First, Farley, as a public housing tenant, is an intended
beneficiary of the procedures outlined in § 1437d(k) and its accompanying HUD regulations.  In
another case involving the very same issue, the United States Court of Appeals for the District of
Columbia examined the legislative history of § 1437d(k), as well as the enforcement history of
the circulars that § 1437d(k) codified.  See Samuels v. District of Columbia, 770 F.2d 184 (D.C.
Cir. 1985).  The Samuels court found "Congress clearly intended to require local PHAs to
provide an administrative grievance procedure for tenant complaints of adverse PHA action, and
nothing in the structure or history of the [Housing] Act indicates that Congress intended to
foreclose private enforcement of that obligation."  Id. at 198.  Samuels also found support in the
fact that the provision "uniformly speaks of a tenant's entitlement to particular procedural
protections in the face of adverse PHA action."  Id. at 197.

Second, the language of § 1437d(k) and 24 C.F.R. § 966.57(b) is mandatory, specific, and
clear.  The language is not too vague or amorphous to be enforced by courts.  The Samuels court
noted that before the codification of § 1437d(k), several courts of appeal entertained tenant
challenges to PHA action and inaction under the original grievance procedures as set forth in the
circulars that pre-dated § 1437d(k).  See Samuels, 770 F.2d at 198.  These courts uniformly held
that the grievance procedures were mandatory and binding on the PHAs.  Id.  Likewise, we
conclude that in enacting the grievance procedure under the Housing Act, Congress intended to
impose mandatory obligations on PHAs.  Section 1437d(k) and the accompanying regulations
plainly set forth the grievance procedure that PHAs must follow.  Section 1437d(k) is not a
general policy section or a "'nudge in the preferred direction[].'"  Pennhurst, 451 U.S. at 19, 101

S.Ct. at 1541 (quoting Rosado v. Wyman, 397 U.S. 397, 413, 90 S. Ct. 1207, 1218 (1970)) (alteration added).  Rather, § 1437 confers enforceable rights within the meaning of Pennhurstand § 1983.

                                    B.
     Farley's claim also does not fall within the Sea Clammers exception. The Supreme Court
has held that in enacting the U.S. Housing Act, Congress did not specifically foreclose a § 1983
remedy by enactment of a comprehensive scheme of remedial mechanisms.  See Wright v. City
of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 107 S.Ct. 766 (1987).  Although
Wright dealt with the Brooke Amendment, a provision under the Housing Act that imposes a rent
ceiling on public housing, the Court also spoke generally about the Housing Act.
     First, the Supreme Court cautioned that courts should not "'lightly conclude that
Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally
secured right."  Id. at 423–24, 107 S.Ct. at 770 (quoting Smith v. Robinson, 468 U.S. at 1012,
104 S.Ct. at 3468.)  The Court then found support in the fact that "HUD itself has never provided
a procedure by which tenants could complain to it about the alleged failures of PHA's to abide
by . . . HUD regulations; nor has it taken unto itself the task of reviewing PHA grievance
procedure decisions."  Id. at 426, 107 S.Ct. at 772.  The Court continued, "HUD thus had no
thought that its own supervisory powers or the grievance system that it had established
foreclosed resort to the courts by tenants."  Id.  The Court concluded that nothing in the Brooke
Amendment or elsewhere in the Housing Act evidences that Congress intended to supplant the §
1983 remedy.  Id. at 429, 107 S.Ct. at 773.  It also noted "the state-court remedy is hardly a
reason to bar an action under § 1983, which was adopted to provide a federal remedy for the
enforcement of federal rights."  Id.  Adhering to Wright, we must reject the PHA's argument that
Farley should have litigated this garden-variety landlord/tenant case in state court.
     The PHA argues that Wright is "not worthy of reliance," and we should disregard it.
Appellant's Br. at 17.  The PHA also implies that Wright has been put into question by a line of
cases that has come after it, and is no longer good law.  In making this assertion, the PHA cites
specifically to Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360 (1992). The PHA contends, first,

that Suter changed the state of the law by announcing that Congressional intent is the most important factor in implying a private right of action. We do not find this argument persuasive. Prior to Suter, the Supreme Court certainly found importance in ascertaining whether Congress intended to create private rights. Indeed, in Wright, the Court based its decision on its finding that Congress did not intend to preclude a § 1983 cause of action for the enforcement of tenants' rights secured by the Housing Act. Wright, 479 U.S. at 425, 107 S.Ct. at 771.

Second, the PHA argues that in the years following the Wright decision, the Supreme Court has disfavored implying private rights of action in spending statutes. Appellant's Br. at 43 (citing Suter v. Artist M, 503 U.S. 347, 112 S.Ct. 1360 (1992)(specific language in the Adoption Assistance and Child Welfare Act, a spending statute, did not create a federally enforceable right under § 1983)). Although Congress's key purpose behind the Housing Act was to provide funding for local housing authorities, the Supreme Court and other courts have found that Congress also intended to establish tenant rights. See Wright v. City of Roanoke Redevelopment and Housing Auth., 479 U.S. 418, 107 S.Ct. 766 (1987)(plaintiffs could bring a § 1983 action to enforce Brooke Amendment of Housing Act which imposes a rent ceiling); see also Samuels v. District of Columbia, 770 F.2d 184 (D.C. Cir. 1985)(plaintiffs could bring § 1983 action to enforce grievance procedure under 1437d(k)); Concerned Tenants Ass'n of Father Panik Village v. Pierce, 685 F. Supp. 316 (D. Conn. 1988)(plaintiffs could bring § 1983 action to enforce § 1437p, which mandates that local authorities obtain HUD approval of demolition).

Moreover, although Suter, like this case, involved a spending statute, the specific statutory language at issue in Suter is completely distinguishable from the language in § 1437d(k). Suter involved a provision of the Adoption Assistance and Child Welfare Act, 42 U.S.C. § 671(a)(15), which provides that states must make "reasonable efforts" to prevent removal of children from their homes and to facilitate reunification of families where removal has occurred. The Court held that this language does not confer an enforceable right upon the Act's beneficiaries. Instead, it found that the statutory language "impose[d] only a rather generalized duty on the State."

Suter, 503 U.S. at 363, 112 S.Ct. at 1370.  By contrast, § 1457d(k) does not merely impose a general duty.  Instead, it mandates the very grievance process that PHAs must follow and details the rights to which the tenants are entitled.

The Supreme Court did not sub silentio overrule Wright in Suter.  It remains good law. Wright held that by enacting the Housing Act, Congress intended to grant enforceable rights to tenants of public housing.  Nothing in Suter or any other case alters this conclusion.

V.

The district court was correct that it had jurisdiction to enforce Farley's public housing arbitration award.  Nowhere in the Brown consent decree did the parties intend to limit enforcement of awards to state court.  The district court was also correct that Farley, a public housing tenant, could maintain a § 1983 action to enforce her federal right to an enforceable grievance procedure as provided for in the Housing Act.  We will affirm the May 8, 1996, order of the district court granting Farley's motion for summary judgment and denying the PHA's cross-motion for summary judgment.