Chief Judge Fuld.
The sole issue, on this direct appeal from orders of the Civil Court of the City of New York, is the constitutionality of section 143-b of the Social Welfare Law, known as the Spiegel Law, providing rent abatement for welfare tenants who live in buildings that contain a ‘ ‘ violation of law * * * which is dangerous, hazardous or detrimental to life or health.”
*490 Petitioner landlord brought these summary eviction proceedings for nonpayment of rent, which were consolidated for trial, against three welfare recipients who were tenants in the same building. The Welfare Department, which had been making the rent payments for these tenants directly to the landlord (Social Welfare Law, § 143-b, subd. 1), appeared on their behalf as amicus cur ice, asserting as a defense that in the apartment of a fourth tenant who was not a welfare recipient there existed a dangerous and hazardous condition which rendered the building unsafe for all occupants. The trial court held that the Spiegel Law was constitutional and, after finding that a hazardous condition existed in the building, dismissed the eviction proceedings.[1]
The Legislature made clear, by its “ Declaration of purpose and necessity ” (L. 1962, eh. 997, § 1), that it was prompted to pass section 143-b of the Social Welfare Law in order to alleviate
‘ ‘ certain [existing] evils and abuses * * * which have caused many tenants, who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services”.
The legislation, designed to operate as an effective weapon in the fight against slum housing in general (see 1963 Opns. Atty. Gen. 181,182; Gribetz and Grad, Housing Code Enforcement, 66 Col. L. Rev. 1254,1282), was adopted only after it became apparent that existing sanctions, including criminal sanctions, were inadequate to cope with the problems of building law enforcement. (See Gribetz and Grad, Housing Code Enforcement, 66 Col. L. Rev. 1254, 1275-1281.) Confronted with this situation, *491 the Legislature responded by enacting not only the rent abatement statute now before us (Social Welfare Law, § 143-b) but also the 1962 Receivership Law (Multiple Dwelling Law, § 309) which we held constitutional several years ago. (See Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291; Matter of Department of Bldgs. of City of N. Y. [Soltzer], 16 N Y 2d 915.)
In the cases before us, the landlord does not challenge the Legislature’s power to require that building law violations be corrected. Her attack is directed solely against the sanction chosen by the Legislature to attain its objective of safe housing. Specifically, her contention is that the rent abatement provided by section 143-b works a denial of equal protection of the laws, a deprivation of property without due process and an unconstitutional impairment of contractual rights.[2]
Although the landlord lacks standing to complain that the statute discriminates in favor of tenants who are welfare recipients (see, e.g., Matter of Guardian Life Ins. Co. v. Chapman, 302 N. Y. 226, 238; Thompson v. Wallin, 276 App. Div. 463, 466, affd. 301 N. Y. 476; United States v. Raines, 362 U. S. 17, 21), she is entitled to urge that it denies equal protection of the laws on the ground that it is aimed only at landlords of welfare recipients. However, it is settled that such legislation is not unconstitutional as long as a “ reasonable basis” exists for differentiating among the members of the same class. (Bucho Holding Co. v. State Rent Comm., 11 N Y 2d 469, 477; see, also, Matter of Town of Smithtown v. Moore, 11 N Y 2d 238, 247; People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429; Ferguson v. Skrupa, 372 U. S. 726, 732-733.) As we wrote in the Durham Realty Corp. case, which involved a statute barring eviction of tenants who paid a “ reasonable ” rent (230 N. Y., at p. 447), “ One class of landlords is selected for regulation because one class conspicuously offends; one class of tenants has protection because all who seek homes cannot be provided *492 with places to sleep and eat. Those who are out of possession, willing to pay exorbitant rentals, or unable to pay any rentals whatever, have been left to shift for themselves. But such classifications deny to no one the equal protection of the laws. The distinction between the groups is real and rests on a substantial basis.”
In the situation presented by the cases before us, it is the landlords of welfare recipients who, the Legislature found, ‘‘ conspicuously offend ”. To-be sure, they are not the only landlords who fail to make repairs in slum dwellings. But welfare recipients have even less freedom than other tenants of deteriorated buildings in selecting a place to live (see, e.g., Matter of Schaeffer v. Montes, 37 Misc 2d 722, 729), and the landlords of welfare recipients, secure in their receipt of rents directly from public funds, have even less incentive than other landlords to make repairs. Under circumstances such as these, if the Legislature chooses to select one class of landlords and impose a special sanction against them, the equal protection clause does not forbid it. (See Ferguson v. Skrupa, 372 U. S. 726, 732-733, supra.)
It is likewise clear that the' State may, in the exercise -of its police power, provide for the curtailment of rent payments to landlords as a means of inducing them to eliminate dangerous housing conditions. (See, e.g., Matter of Department of Bldgs. of City of N. Y. [Soltzer], 16 N Y 2d 915, supra; Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291, supra; Nordred Realties v. Langley, 279 N. Y. 636, cert. den. 306 U. S. 655; cf. People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, supra.) We have, in the past, upheld and applied statutes or regulations, not too unlike the one before us, which provide for (1) rent reduction (see Matter of F & M Realty Co. v. Gabel, 21 A D 2d 853, mot. for lv. to app. den. 14 N Y 2d 490), (2) partial rent abatement (see Nordred Realties v. Langley, 169 Misc. 659, 661, affd. 279 N. Y. 636, cert. den. 306 U. S. 655, supra) and (3) rent receivership. (See Matter of Department of Bldgs. of City of N. Y. [Soltzer], 16 N Y 2d 915, supra; Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291, supra.)
Nor is the .statute subject to criticism on constitutional grounds because it does not, in so many words, call for notice *493 and hearing to the landlord. The simple fact is that both are implicit in the statutory scheme. By providing that a violation of the building laws is “ a valid defense ”— to be pleaded as such—in a summary eviction proceeding (subd. 5, par. [a]), the section affords the landlord ample notice of the violation and full opportunity to refute the claim and litigate the issue. In short, the statute “ import[s] a hearing” (Matter of Department of Bldgs. of City of N. Y. [Philco Realty Corp.], 14 N Y 2d 291, 302, supra) and, as already indicated, the landlord before us actually received a full hearing with respect to both the existence and hazardous character of the violation in question.
It is clear, too, that section 143-b does not effect any unconstitutional impairment of the landlord’s contractual rights. “ If the legislation before us ‘ is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end ’ ”, this court declared in the Philco Realty case (14 N Y 2d, at pp. 297-298), ‘ ‘ it may not be stricken as unconstitutional, even though it may interfere with rights established by existing contracts. (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 438.) It is ‘ fundamental ’ * * * that ‘ the state may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power although the rights of private property are [thereby] * * * curtailed and freedom of contract is abridged.’ ” And, after noting that contracts are made subject to the exercise of the State’s power when justified, we went on to say that, whether this protective power of the State be treated as “an implied condition of every contract and, as such, as much part of the contract as though it were written into it ” or as “ ‘ an exercise of the sovereign right of the Government to protect the * * * general welfare of the people * * * paramount to any rights under contracts between individuals ’ ” (East New York Bank v. Hahn, 326 U. S. 230, 232-233), it is “ 6 settled law ’ ” that ‘ ‘ ‘ the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as * * * are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected.’ ” (Home Bldg. & Loan Assn. v. Blaisdell, 290 U. S. 398, 437.) The remedial legislation chai *494 lenged in the case before us is reasonably aimed at correcting the evil of substandard housing and may not be stricken as unconstitutional even though the means devised to accomplish that result may, to some extent, impair the obligation of the landlord’s contract.
•The appellant’s remaining points bear on the wisdom rather than the constitutionality of this legislation and require no discussion. As we have sought to demonstrate, section 143-b of the Social Welfare Law is free from any constitutional impediment.
The orders appealed from should be affirmed, with costs.

. The court found that the faulty operation of the apartment door on the third floor — required by statute to be “ self-closing ” (Multiple Dwelling Law, § 238, subd. 4, par. c; Administrative Code of City of New York, § D26-7.2) —■ prevented the door from being a "seal against * * * Are" and would facilitate the spread of flames, smoke and gas fumes. On this direct appeal from orders of the trial court, we must, of course, accept its factual determination that the condition was dangerous and hazardous to the life and health of the building’s occupants. (CPLR 5601, subd. [b], par. 2; see I.L.F.Y. Co. v. City Rent Administration, 11 N Y 2d 480, 489.)

. Initially, the landlord had a right to recover all of the rent payments which had been withheld as soon as he corrected the building law violations (Social Welfare Law, § 143-b, subd. 5) but the statute was amended in 1965 to make the recovery of back rent a matter resting within the sound discretion of the . Welfare Depatment (L. 1965, eh. 701; Social Welfare Law, § 143-b, subd. 5, par. [b]; subd. 6).