OPINION OF THE COURT
WlLMER J. PATLOW, J.
This is a CPLR article 78 proceeding in which petitioner Lon Clark seeks, inter alia, annulment of respondent Perales’ decision dated March 27, 1986 which denied petitioner the sum of $1,006.45
In March 1985 petitioner was a recipient of Home Relief from the respondent Monroe County Department of Social Services (hereinafter DSS). On March 4, 1985 petitioner applied to the Social Security Administration for Supplemental Security Income (hereinafter SSI) benefits based upon his liver and lymphatic disorders. Two days later, on March 6, 1985, petitioner signed a routine interim assistance agreement with DSS whereby petitioner agreed to repay the local agency with any retroactive lump-sum SSI check he might receive from the Federal Government.
Coincidentally on March 6, 1986 petitioner moved into an apartment at 88 Alexander Street, Rochester, New York. The rent for this apartment was $200 per month but petitioner’s shelter allowance was only $188 per month. Consequently, petitioner’s basic living allowance was to be reduced by $12 per month to make up the shortfall. Petitioner consented to a voucher arrangement whereby DSS paid the $200 directly to the landlord. A prorated amount of rent ($167.70) was in fact paid to the landlord by DSS for the portion of the month of March 1985 that petitioner lived there.
Commencing in April 1985, however, DSS began withholding the $200 rent from the landlord pursuant to section 143-b of the Social Services Law, because it discovered that in September 1984 and again in January 1985 the City of Rochester had declared the premises at 86-88 Alexander Street to be in violation of the housing code in numerous respects. *717 These violations included defects in the gas and electric service to the apartment building where petitioner lived.
On September 20, 1985 petitioner vacated the premises and moved to a new location.
Subsequently, on November 18, 1985, DSS issued a check in the amount of $1,006.45 to the landlord for back rent for the period April 1, 1985 to September 20, 1985. This repayment occurred because on July 26, 1985 DSS had received notification from the landlord that the violations had been corrected.
Concurrently in November 1985 petitioner was found to be eligible for SSI benefits retroactive to his March 4, 1985 application. Thus on January 23, 1986, pursuant to the interim assistance agreement, the Social Security Administration sent the sum of $3,507.26 in retroactive benefits directly to DSS.
Respondent DSS calculated that petitioner had received $3,603.97 in interim assistance, which sum included the $1,006.45 rent paid to the landlord on petitioner’s behalf. Consequently, DSS retained the entire SSI check of $3,507.26 because the assistance rendered petitioner exceeded the SSI retroactive award.
Petitioner challenged DSS’s determination to withhold the entire SSI retroactive benefit and a fair hearing was held March 5, 1986. A "decision after fair hearing” affirming DSS’s determination was rendered March 27, 1986 by respondent Perales, and this article 78 petition followed.
The basis for petitioner’s application is the alleged failure of DSS to notify petitioner at the time it commenced withholding rent and again at the time it paid the withheld rent over to the landlord.
At the fair hearing held March 5, 1986 a representative of the local agency testified that there was nothing in petitioner’s file to indicate that such written notices had been sent. However, in response to the instant petition DSS has attached an affidavit from petitioner’s caseworker stating it was "more than likely” that the rent withholding had been mentioned to petitioner during the course of numerous discussions concerning petitioner’s dissatisfaction with the rental premises.
Assuming this most recent affidavit is true, respondent still does not deny and so the court must accept the fact that no written notification was ever given petitioner.
Petitioner makes several arguments with respect to the lack of written notice as follows: (1) that the lack of written notice *718 violated his constitutional rights; (2) that DSS’s own rules and regulations (18 NYCRR 358.3, 358.8) required it to notify him of the withholding and subsequent release of rent; (3) that respondents violated the statutory purposes behind section 143-b of the Social Services Law and section 235-b of the Real Property Law; (4) that DSS breached its fiduciary duty to petitioner, which duty DSS had assumed when it exercised its discretion to withhold the rent, and (5) that DSS acted arbitrarily and capriciously when it violated its announced procedure of releasing rent only if corrections are made within three months from the initial withholding.
The court’s initial determination is that, in any event, DSS’s failure to notify petitioner of the withholding and subsequent release of rent pursuant to section 143-b of the Social Services Law does not rise to the level of a violation of petitioner’s constitutional rights.
The relevant constitutional standards are found in Goldberg v Kelly (397 US 254) in which the United States Supreme Court struck down prior New York regulations which failed to provide the welfare recipient with an evidentiary hearing prior to terminating benefits.
In balancing the conflicting interests of individual and State, the high court stated: "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss’ * * * and depends upon whether the recipient’s interest in avoiding that loss outweighs the governmental interest in summary adjudication” (Goldberg v Kelly supra, at 263).
The court continued: "[T]he crucial factor in this context * * * is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy” (Goldberg v Kelly, supra, at 264; emphasis in original).
The case at bar is readily distinguishable from Goldberg v Kelly (supra). Unlike a proposed termination of benefits, respondent’s intention to withhold rent from the landlord on behalf of petitioner and to repay it upon correction of the housing violations did not even approach depriving petitioner of "the very means by which to live” nor did it cause his *719 situation to become "immediately desperate.” Consequently, since it cannot be said that petitioner’s interest was nearly as compelling as that found in Goldberg v Kelly, the balance of conflicting interest weighs more heavily in favor of respondent. Therefore the court concludes that respondent’s failure to notify petitioner in writing does not constitute a violation of due process.
Nevertheless, it appears that DSS’s own rules and regulations may afford petitioner greater protection than the Constitution.
It appears to this court that petitioner was entitled to written notice under part 358 of the Department’s regulations, particularly 18 NYCRR 358.3 and 358.8.
That portion of 18 NYCRR 358.3 which requires DSS to give the recipient notice of "any agency action affecting his receipt of assistance or services” (emphasis supplied) is certainly broad enough to encompass DSS’s actions here.
Likewise, 18 NYCRR 358.8 (a) requires timely and adequate notice of "any proposed action * * * to change the manner or method of assistance payments to protective, vendor or two-party payments” (emphasis supplied).
Respondent argues that 18 NYCRR 358.8 (a) is applicable only where a recipient has already requested a fair hearing because the caption to section 358.8 reads "Continuation of assistance payments, medical assistance authorization and food stamp authorization when fair hearing is requested”.
This argument is unpersuasive because such restriction was specifically included in subdivision (c) of section 358.8, but omitted from subdivision (a), leading the court to conclude that the omission was intentional. Furthermore, to read into 18 NYCRR 358.8 (a) an additional notice requirement where the recipient has already requested a fair hearing makes no sense in the regulatory scheme.
The court notes that 18 NYCRR 358.4 bestows a right to a fair hearing upon recipients, like petitioner, who object to "inadequacy in amount or manner of payment of assistance” (18 NYCRR 358.4 [a] [3]; emphasis supplied); or "department policy as it affects the * * * recipient’s situation” (18 NYCRR 358.4 [a] [5]). Recipients may also raise "any other grounds affecting the * * * recipient’s entitlement to assistance or the amount thereof or the time of payment thereof” (18 NYCRR 358.4 [a] [6]; emphasis supplied). Such rights to a fair hearing *720 would effectively be nullified in the absence of coextensive notice requirement.
Concerning the consequences of such lack of notice, petitioner first posits that as a tenant he had certain rights and remedies available to him by virtue of the landlord’s breach of the implied warranty of habitability set forth in section 235-b of the Real Property Law. Petitioner argues that DSS’s failure to notify him in effect deprived him of alternative remedies, such as repairing the violations and deducting the cost or seeking money damages for the landlord’s breach. If, for instance, the rent had been abated or reduced, the amount paid out on behalf of petitioner may have been less than the SSI lump-sum check, in which case petitioner would have been entitled to a portion of that SSI retroactive payment.
The gravamen of petitioner’s complaint, however, appears to be that DSS’s failure to notify deprived him of the opportunity to protect his financial interest in ensuring that the repayment of rent to the landlord was no greater than was warranted under the circumstances.
In considering the effects of the lack of written notice, the court notes that there are two distinct points in time at which notice should have been given: the first being when DSS determined to withhold the rent from the landlord and the second being when DSS determined to release all or part of the withheld rental payments to the landlord in question.
Turning for the moment to that second point in time, the court notes that in the usual case, a welfare recipient may have no pecuniary interest at all in this transaction. This is so because any reduction in rent ordinarily inures primarily to the benefit of the welfare department. Thus, a welfare recipient generally would suffer no harm as a result of DSS’s failure to notify him at this point in the process.
One exception to this would be where the rent exceeded a recipient’s shelter allowance and his grant was used to take up the shortfall. A rent reduction would then theoretically free up that portion of the recipient’s grant previously applied towards the rent. Thus, in the case at bar, to the extent that DSS reduced its rental payments to the landlord by $12 or more per month, such reduction should arguably inure to the benefit of the petitioner in the form of recoupment of the $12 per month portion of his basic living allowance which was originally set aside to cover the $200 anticipated in rent.
A superseding problem for petitioner here, however, is that *721 he is obligated by the interim assistance agreement to reimburse respondent DSS for all outlays made on his behalf, regardless of whether it takes the form of basic living grant or rental allowance.
Nevertheless, a smaller payment to the landlord for rent would still benefit petitioner because it would mean a smaller reduction by DSS from petitioner’s lump-sum retroactive SSI benefits. In other words, if, for example, the rent to the landlord were entirely abated, DSS would have paid out on petitioner’s behalf the sum of $3,603.97 minus the rental payments of $1,006.45 which equals a sum of $2,597.52. This reduced sum of $2,597.52 in expenditures made by DSS on behalf of petitioner is less than the $3,507.26 lump-sum SSI check received by DSS. Consequently, petitioner would be entitled to a refund of the difference between the two, a sum of $909.74.
As to the amount of repayment once the premises have been repaired, it is well settled that "the recovery of back rent [is] a matter resting within the sound discretion of the Welfare Department” (Matter of Farrell v Drew, 19 NY2d 486, 491, n 2).
Section 143-b of the Social Services Law was amended in 1965 to clarify the point and the legislative history elaborates as follows:
"The proposed amendment would make it clear that the landlord is not legally entitled to payment of rent withheld for the period during which the condition constituting the violation remains uncorrected.
"The bill would restore to the public welfare official the discretion to differentiate between those landlords who are not guilty of censurable conduct and those who have exploited their tenants for extended periods and who, but for the remedies provided under this statute, would probably have continued to do so” (1965 NY Legis Ann, at 303).
The essential question posed in this article 78 proceeding, then, is whether respondent DSS abused its discretion in paying petitioner’s landlord the sum of $1,006.45 in back rent for the period from April 1, 1985 through September 20, 1985.
Petitioner contends that DSS abused its discretion by repaying the rent in contravention of its own notice to the landlord which states: "This Department will release the shelter allowance providing that the necessary violations are corrected *722 within three months from the effective date of the initial withholding of the shelter allowance.”
According to petitioner, respondent violated this provision when it repaid the landlord despite the fact that more than three months elapsed between the initial withholding on April 1, 1985 and the July 26, 1985 receipt of notice that the violations had been corrected.
Respondent points out that the time lapse between the initial withholding and the correction of the violations was only about 3 Vi months, not an undue delay.
Furthermore, respondent represents to the court that it does not strictly adhere to a three-month deadline where, as here, the landlord has shown good faith by at least commencing the repairs within the specified period and by completing the work shortly thereafter. Such payment is apparently deemed an incentive to ensure the landlord’s future cooperation.
Based upon the above information, the court cannot conclude that DSS abused its discretion merely by failing, under the circumstances, to strictly comply with a policy which, it is noted, was never duly promulgated.
For purposes of determining whether respondent acted arbitrarily or capriciously, the court has also considered the fact that DSS did not release the entire rent due to the landlord but only a portion thereof.
It is established that the actual rent for petitioner’s premises at 88 Alexander Street was $200 per month for the relevant period from April 1, 1985 to September 20, 1985. On this basis the court calculates that the rental due for 5% months was the sum of $1,133.
It is undisputed that the amount repaid to the landlord by respondent DSS for the period in question was the sum of $1,006.45. Thus it appears that respondent DSS in fact abated the rent by an amount which constitutes an approximate reduction of 11%.
At the March 5, 1986 administrative fair hearing, petitioner produced an expert witness who testified that in her experience as an attorney in City Court representing tenants in rent abatement cases, the Judge had complete discretion to reduce the rent up to 100% and in a case similar to petitioner’s, an abatement of between 30 and 40% might have been expected.
Although petitioner obviously would have preferred a greater reduction, this court cannot conclude that 11% is so *723 far afield, especially given the admittedly wide latitude, so as to constitute an abuse of discretion by respondent.
Thus, although the Department’s regulations may technically have required DSS to notify petitioner of its intention to repay the landlord, petitioner suffered no harm thereby because he was afforded the opportunity to challenge the repayment at the time when it affected his reimbursement under the interim assistance agreement and because in any event the repayment by DSS was not arbitrary, capricious or an abuse of discretion.
Focusing now on the point at which DSS initially determined to withhold the rent, petitioner contends that DSS’s failure to notify deprived him of certain alternative courses which are now foreclosed. With the benefit of hindsight, petitioner seems to be arguing that perhaps he would have pursued relief in a different forum, such as the courts, or that he could have used the rent to make the needed repairs.
The determination to withhold rent pursuant to section 143-b of the Social Services Law rests within the discretion of the public welfare official (Matter of Fidler v Kurtis, 40 Misc 2d 905; Social Services Law § 143-b [2]).
Petitioner and respondent both agree that the outstanding code violations on the premises at 88 Alexander Street were of such nature as to be "dangerous, hazardous or detrimental to life or health” (see, Social Services Law § 143-b [2]) and thus they would undisputedly serve as a predicate for DSS’s decision to withhold the rental payments.
In point of fact the only immediate result of a successful challenge to DSS’s determination to withhold rent would have been to have DSS pay the landlord instead. Petitioner then would have had to revoke his consent to the voucher arrangement and, when he received the money, decide whether to make the repairs himself, deposit the money in court and press for an adjudication in that forum or withhold the rent and wait for the landlord to sue him. That petitioner would have pursued the matter diligently and ultimately received a more favorable outcome is at best highly speculative.
Indeed, petitioner’s expert witness testified at the March 5, 1986 fair hearing that she occasionally represented welfare tenants prior to the involvement of DSS in withholding rent, and that when DSS finally entered the picture, its authority was accorded great deference and respect. This suggests that the greater likelihood is that petitioner would have concluded *724 at the time that the withholding of rent by DSS was in his own best interests.
The court concludes that respondent DSS’s determination to withhold rent from the landlord upon receiving notice of the code violations was neither arbitrary, capricious nor an abuse of discretion, and that the harm petitioner claims he suffered by lack of written notice of such determination is speculative in nature and therefore an insufficient basis upon which this court can grant relief.
In passing the court notes that it has considered petitioner’s arguments with respect to statutory purpose and fiduciary duty. However, the court has been unable to find anything in respondent’s action which would contravene the statutory purposes of section 143-b of the Social Services Law or section 235-b of the Real Property Law. And, although petitioner has cited authority to the effect that the welfare agency is an agent of the recipient for purposes of defending an eviction proceeding by the landlord (Sessa v Blakney, 71 Misc 2d 432, 435; Blackman v Walker, 65 Misc 2d 138, 139), it does not follow that the agency is a fiduciary for all purposes particularly where section 143-b of the Social Services Law so clearly authorizes the Department to exercise its own discretion.
On the basis of all of the foregoing, this article 78 petition is denied and the proceeding dismissed.
Petitioner’s application for attorney’s fees is denied as there has been no showing of a violation of petitioner’s constitutional rights.