Ciparick, J. (dissenting).
Because a plain reading of Social *468 Services Law § 143-b (5)—the Spiegel Law—allows a recipient of public assistance, under certain circumstances, to interpose a defense to an action or summary proceeding for the nonpayment of rent, where a “public welfare” agency has not previously withheld its share of the rent, I respectfully dissent.
The statute provides that “[i]t shall be a valid defense in any action or summary proceeding against a welfare recipient for non-payment of rent to show existing violations in the building wherein such welfare recipient resides which relate to conditions which are dangerous, hazardous or detrimental to life or health as the basis for non-payment” (Social Services Law § 143-b [5] [a]). It also provides that a landlord will not be entitled to a monetary award against the tenant or to possession of the premises where these types of hazardous violations are present (see Social Services Law § 143-b [5] [b]).
It is well-established that statutory interpretation begins with the plain language of the statute (see Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104 [2001]; Majewski v BroadalbinPerth Cent. School Dist., 91 NY2d 577, 583 [1998]). “As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof’ (Majewski, 91 NY2d at 583). This primary rule of statutory interpretation has been eschewed by the majority in favor of a construction that considers the statute as a whole and sets forth some “equivocal evidence of legislative intent” (Desiderio v Ochs, 100 NY2d 159, 169 [2003]). I prefer a literal reading and look to the unambiguous language of the statute.
The unambiguous language of Social Services Law § 143-b (5) makes no mention of the public welfare official or agency. There is nothing in the provision requiring that the agency must act first to withhold rent on the tenant’s behalf. Thus, the plain language of the statute permits a tenant to invoke the Spiegel Law defense for nonpayment of rent, regardless of whether there has been a prior withholding of rent by the public welfare agency, here the New York City Human Resources Administration. Further, as this Court has previously noted, section 143-b is remedial in nature (see Matter of Farrell v Drew, 19 NY2d 486, 493-494 [1967]). As such, it must be liberally construed to accomplish its intended purpose (see Matter of New York County DES Litig., 89 NY2d 506, 514 [1997]). The statute should not be read to imply a restriction that does not appear on its face.
However, even construing the statute as a whole and applying the canon of construction urged by the majority, does not lead *469 to the conclusion that it is the public welfare agency who must first withhold rent in order for the tenant to be able to invoke the Spiegel Law defense. As the dissenting Appellate Division Justices most aptly observed, the absence of any reference to public welfare officials in subdivision (5) lends itself equally well to the interpretation that the Legislature—which referenced either the public welfare department or public welfare official in subdivisions (1) through (4)—intentionally omitted such reference and intended to allow tenants to withhold their own rent where appropriate in subdivision (5) (308 AD2d 164, 175-176 [2003] [Luciano, J., dissenting]).
Generally, the purpose for reading provisions of a statute as a whole is to accurately determine the legislative intent (see McKinney’s Cons Laws of NY, Book 1, Statutes § 97). But here, the legislative intent was clear—to attempt to ameliorate the poor housing conditions faced by many tenants receiving public assistance. The “Declaration of purpose and necessity” states that:
“[t]he legislature hereby finds and declares that certain evils and abuses exist which have caused many tenants, who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services in violation of the laws of the state” (L 1962, ch 996, § 1; see also Farrell, 19 NY2d at 490 [indicating that the legislation was intended to combat “slum housing”]).
The provision was clearly enacted because existing remedies were insufficient to combat the problems faced by tenants receiving public assistance. Allowing tenants to withhold rent themselves continues to further the purpose of the statute, especially in light of the present situation where public welfare officials apparently are not using their statutory power to withhold rent when violations are present. Welfare officials typically do not withhold payments before an action or a special proceeding is commenced (see Lebovits, Nonpayment Proceedings: The So-Called Spiegel Defense, 2 Landlord-Tenant Prac Rep 1, 5 [May 2001]). In light of this inaction, the majority’s interpretation of the statute essentially thwarts its purpose—taking away the threat of nonpayment of rent to offending landlords and the incentive to make repairs. A plain reading of the statute is nei *470 ther an attempt to undermine the statutory scheme nor to rewrite it (see majority op at 465, 467), but preserves for all recipients of public assistance a defense conferred by the Legislature.*
The prevailing practice at the time the statute was enacted was for a public welfare agency to pay the entire amount of the tenant’s rent. The rent payments would ordinarily be made to the tenant, who would then pay the landlord, in the absence of habitual delinquency or certain other circumstances (see Joint Legis Comm on Hous and Multiple Dwellings Mem in Support, Bill Jacket, L 1962, ch 997, at 12). For this reason, it is not surprising that the legislative history reflects a desire to stop the use of public funds to support substandard housing (see majority op at 465-466). This is in contrast to the current practice, where the agency pays only a portion of the rent in the form of a shelter grant and the tenant pays the difference. However, the broad language of section 143-b (5) (a) has remained unchanged.
In addition, a statutory safeguard is in place to protect against abuses. Section 143-b (5) (c) requires that the Spiegel Law defense will only be available where the existing violations have been reported to the welfare officials by an appropriate agency, here the New York City Department of Housing Preservation and Development. Thus, only documented violations would qualify. This dispels the concern that the defense can be abused by tenants attempting to avoid paying rent (see majority op at 467). It is perhaps debatable whether hazardous conditions or conditions harmful to one’s life or health existing in the building—although not in the tenant’s own apartment—would have no effect on the tenant. However, as the majority observes in a footnote, the statute allows for the defense where violations exist in a building “regardless of the given apartment’s nexus with the violation” (majority op at 467 n 3).
Further support for the position that a tenant does not have to await action by a public welfare official to invoke the Spiegel Law defense can be found in Real Property Actions and Proceedings Law § 745. This relatively recent 1997 enactment—part of the Rent Regulation Reform Act of 1997 (L 1997, ch 116, § 36)— requires a tenant in a summary proceeding wherein an adjournment is requested by the tenant to deposit a sum with the court *471 sufficient to cover the amount of rent or use and occupancy from the date of the commencement of the action unless, among other things, the tenant can demonstrate that he or she has properly interposed a Spiegel Law defense (see RPAPL 745 [2] [a] [iii]). The provision does not differentiate between sums paid by the tenant and sums paid by a public welfare agency. It makes clear only that the tenant is not required to deposit any portion of the rent. Certainly if the intent was otherwise, the Legislature could have said so. Neither does the availability of other remedies such as Real Property Law § 235-b—the warranty of habitability statute—or Multiple Dwelling Law § 302-a—which defines a rent impairing violation—lead to the conclusion that the Legislature intended a requirement of prior withholding of rent by a public welfare agency as a precondition to a tenant’s invocation of the Spiegel Law defense.
In conclusion, the plain language of section 143-b does not require a public welfare agency to withhold rent before a tenant can assert the Spiegel Law defense in an action or summary proceeding for nonpayment of rent. In light of the remedial nature of the statute and the broad legislative purpose to correct the unique problems faced by tenants receiving public assistance living in substandard housing, such a restriction should not be read into the provision. The legislative intent is best served by a plain reading of the statute, authorizing tenants receiving public assistance to withhold rent when documented hazardous violations exist on the premises that are dangerous to life or health. If the public policy in this area has changed over the last 40 years, then it is for the Legislature to redraft the statute to reflect it. It cannot be done by ignoring the plain language of the statute and its overriding purpose and intent “which is to ensure decent housing for economically fragile individuals” (308 AD2d at 176 [Luciano, J., dissenting]).
Therefore, I would reverse the order of the Appellate Division and grant appellant’s motion for summary judgment dismissing the petition.
Chief Judge Kaye and Judges Graffeo, Read and R.S. Smith concur with Judge Rosenblatt; Judge Ciparick dissents and votes to reverse in a separate opinion in which Judge G.B. Smith concurs.
Order affirmed, etc.

 It certainly is an anomaly to have two different groups of welfare tenants, one where the public welfare agency has previously withheld the payment of rent, with access to a Spiegel Law defense, and a second group where this “condition precedent” has not been met, without the benefit of such defense.